CASE 42—EQUITY—SEPTEMBER 22, 1883.

# Titherington's adm'r v. Hodge, &c.

APPEAL FROM CRITTENDEN CIRCUIT COURT.

1. A commissioner and receiver of a circuit court will not be permitted to derive profit or benefit from the purchase of claims referred to him and in his hands for proof of debts and priority.

2. His relation to litigants, whose claims are before him for action, is fiducial, and he will be held as a trustee for the benefit of those whose claims he has purchased for less than they are ascertained to be worth.

3. Appellant Barrett having become the surety of appellee Hodge as receiver, after he purchased the claim, is not bound to appellant for the failure of the receiver to account to him.

Titherington's adm'r v. Hodge, &c.

COOK & TOWERY for appellant.

1. The proof shows without question that appellee Hodge bought the claim of appellant for less than one fourth of its value. As commissioner and receiver, he must have known its value.

2. He must be held as a trustee for appellant's benefit, and is bound to pay the full value of the demand. (Narwest v. Walker, 2 B. Mon., 243; Pugh v. Bell, 1 J. J. Mar., 406; Longest v. Tyler, 1 Duv., 194; C. & L. R. R. v. Bowler, 9 Bush, 476; Lynn v. Ball, 7 Dana, 424; Richardson v. Spencer, 18 B. Mon., 465.)

WM. LINDSAY for appellees.

1. Appellee Hodge, as all the proof shows, was guilty of no fraud in his purchase of the claim from appellants.

2. The creditors of Jenkins reposed no confidence in Hodge, except that he would have the money in his hands subject to the orders of the court. (Story's Eq. Jurisprudence, sec. 325; High on Receivers, sec. 193.)

3. Appellee Barrett cannot be held bound to appellant upon the bond sued upon, because the purchase of the claim in controversy was made prior to the execution of the bond.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Jenkins died insolvent, and his estate, or a part of it, was committed to the hands of the appellee Hodge, as special commissioner, for the purpose of selling the property and holding the proceeds for distribution between creditors. Titherington being a creditor, filed his claims against the estate, and insisted that he was entitled to priority, his lien growing out of certain partnership transactions between himself and the decedent Jenkins. The case was on the docket for many years, and, before its termination, Titherington died, and his estate went also to the commissioner, Hodge.

James Titherington was the administrator of this estate, and Hodge the commissioner or receiver of both estates. The administrator of Titherington being pressed by the creditors of the estate for payment, and the cases lingering on the docket for years, finally sold the claim of his

decedent against Jenkins' estate to Hodge, the commissioner, for $600, or about that sum, and not long after this the claim of Titherington against Jenkins was allowed as a preferred claim, amounting to largely over $3,000. So we find the commissioner in the one case, who was the special receiver or commissioner in the other, obtaining this sum of money for $600. The defense, or the substance of it, is, that the Jenkins·suit had been pending for nearly twenty years, and the administrator of Titherington, becoming disheartened at the prospects of a recovery, sold his claim, against the advice of counsel, for this small sum. It is evident from this record that there was money enough in the hands of Hodge at the time this transfer and sale was made to pay Titherington as much as $600, and if Titherington and the commissioner were both in ignorance as to the condition of the estate, it was at least an unconscientious bargain. Nor will we stop to inquire whether or not there was actual fraud practiced by Hodge on the administrator of Titherington, as there is a rule of equity applicable to the facts involved in this case that will preclude the appellee, Hodge, from holding on to this money. It may be conceded that he withheld no fact from the administrator that he was compelled to disclose, and the chancellor may close his eyes as to the great inadequacy of the sum paid, and still the fiducial relation that the appellee Hodge occupied towards the parties to the litigation, and the property involved by it, prohibited him from making the purchase or speculating on the trust fund. He will not be permitted to derive any benefit from such a purchase, and to establish a contrary rule would be an inducement to the officers of the court who have the control of the property and the distribution of the proceeds, to protract the litigation until all parties in

interest are ready to sacrifice their claims in order to have it ended.

The law has wisely removed all temptation from officers of the court and others occupying fiducial relations to the parties and the property in litigation, in declaring that the purchase, when made, shall inure to the benefit of the parties interested, and is voidable at their election.

High on Receivers, after discussing the relation of such a fiduciary to the fund under his control, proceeds to say: "The general rule, as above stated, denying receivers the privilege of becoming purchasers of property pertaining to their trust, is entirely independent of the question whether any fraud, in fact, has intervened." (Section 194.)

The equitable doctrine is so well understood that it requires no reference to authorities in support of it, and the court below erred in dismissing the petition as against Hodge.

The question next arises as to the liability of the surety on the bond of Hodge as special commissioner. The petition fails to state a cause of action against the surety, and the facts of the record show that the surety is not responsible. The action is on the receiver's bond against principal and surety for failing to pay the money over under an order of the court. Waiving the question as to whether such an order had been entered, and still the surety is not liable.

At the time this bond was executed, the fund in controversy, so far as the record or the facts show, was the property of the appellee Hodge. The appellant had not then elected to avoid the contract, and the transfer had been made by the appellant to Hodge before Barrett became his surety. It appears that after this transfer had been made, some of the creditors becoming uneasy, required Hodge to

execute a new bond, and Barrett became the surety. This surety had the right to believe that the receiver was in fact the owner of the fund, and he, no doubt, would have hesitated in assuming the responsibility of surety if informed that the receiver was liable to the appellant for over three thousand dollars.

It is not alleged that the surety had notice of any fraud or of the intention of Titherington to avoid the contract.

The appellant had placed it in the power of the appellee, Hodge, to waste or dispose of the fund as his own long before the surety became liable, and the latter is in court with his *defense*, insisting that the purchase was made in good faith. The party entitled to the debt will not be permitted to transfer it to the fiduciary and then reclaim it of a surety who became subsequently bound for the acts of the trustee, without any knowledge of the fraud, if any, or without the knowledge even of the character of the transaction between the parties. As between the surety and the appellant, the latter must bear the loss, and it would be unjust to the surety to hold otherwise.

The judgment is therefore reversed as to Hodge, and remanded for further proceedings, and affirmed as to Barrett.